Judge Owsley
delivered the opinion of the court.
This ejectment was brought against Slaughter, the tenant in possession, for the purpose of recovering a tract of land, the title whereof is asserted by the appellants under a patent which issued to John May from the state of Virginia in 1785.
The action was commenced in March, 1816, by the service of a declaration containing a demise from Kendal only, but at the October term thereafter, he applied to the court for leave to amend his declaration, by inserting among others, a demise from William May, George May. and Ilarry Innis, the surviving executors of the last will of John May, dec.; but the court, so far as respected William May, refused to permit the amendment, and exceptions having been taken to that refusal, it npw becomes necessary lor this court to decide, whether the amendment should have been allowed?
It might be a question whether, under any circumstances, the name of William May should have been introduced an amendment to ⅛¾ declaration; hut if it should, there can be no question, as he is shewn to have not Only failed, but refused, to act as an executor, but that the court decided correctly in not allowing the demise to be laid in his name,
The declaration was however amended by adding several additional demises; one from John L. Mac, and another from Daniel Eppes and Polly his wife, late Polly ¡Slav, the children and heirs of John May, dec. and the general issue being pleaded by Slaughter, a trial was thereupon had.
In the course of the trial, but after the evidence was gone through, that court was asked to instruct the jury, that if íhey believed the evidence, the plaintiffs were entitled to a *376 verdict for all the land not actually inclosed by Slaughter twenLv years before the commencement of this action, but the court being of opinion that Slaughter’s possession was co-exfensive with his purchase from Brady, instructed the jury accordingly: And moreover informed the jury, that ai-though Brady had not then conveyed to Slaughter, yet Slaughter’s possession should be construed to extend to the vvj10|e 0f |⅛. nurchase when Brady’s patent issued,
patent issues and his pur-⅜⅞36 he^ V possessed to the extent of his purchase, of "the6 firs^ entry.
Assuming as true every tact which the evidence conduced to prove, (and as it was upon that hypothesis the instructions were ⅞⅛6(] by the plaintiffs, surely it should be so eonsider-6⅜) *s impossible to perceive any solid objection to the decision of the court.
Without having entered under any specific claim, or claiming title to any precise boundary, Slaughter, most clearly, could not have gained a possession beyond his ac - tual close; but as he is proven to have taken possession under Brady’s claim, which before then was abutted by actual survey, unless prevented by something else in the cause, his possession should be circumscribed by the boundaries of that survey.
He is proven, it is trde, to have purchased but 250 acres from Brady, and although he is said to have entered under Brady’s claim, the fair inference ought probably to be, that in consequence of that purchase he entered under Brady’s claim, but as the 250 acres were not bounded when he entered: in deciding upon the evidence which states that he entered under the claim of Brady, we apprehend he should be construed to have, by that entry, gained the possession to the extent of Brady’s survey; and if so, as the 250 acres as now claimed and abutted by the boundary of Brady’g deed, forms but a part of the survey of Brady, the court cannot have erred either in refusing to instruct the jury that Slaughter’s possession was twenty years before the corn-mencement of this action, limited by his actual close, or in instructing them that he was, at the date of Brady’s patent* w^*c^ aPPears to be several years after his entry under him, to the full extent of his purchase from Brady,
The evidence having shewn a title in John May, and it being proven that he died in 1794, about seven years after Slaughter obtained the possession, leaving John L. May and Polly Eppes infants, and residents of Virginia; and Polly Eppes being moreover shewn to be, at the time of trial, a feme covert, the court were applied to for the purpose of *377 obtaining instructions to the jury, that if they believed the evidence that the statute of limitations did not commence running against the lessors John L. May and Polly Eppes, until ten year's after their disabilities were removed or their coming to full age; but the court refused to give the instructions as asked.
The act of !^’⅞6162) ¿p^ded. ~
The act of I0~> three years after disabil-l*y lm|ess" she was cov-when ;)cr accru
Whether, therefore, the court ought to have given the instructions, is the next question presented for decision.
As the lessors, May and Eppes, were infants at the deCease of their father, it is perfectly clear, according to the act of the Virginia legislature, in force at the separation of that state from this, that they are allowed ten yeais, after coming at full age, to make their entry upon the land, or to bring their action for its recovery; but, by act of the legislature of this country, passed the 22 d January, 1814, (session acts, 1813, page 162,) instead of the ten years allowed by the act of Virginia, infants are required to make their entry or bring their action within three years after coming of age; and as this, action was brought after the act of this country went into operation, and both May and Eppes are proven to have arrived at full age more than three years before the action was commenced, the statute of limitations cannot, in consequence of their infancy, have been prevented from running, unless, as is contended by some, the legislature were interdicted, by the compact with Virginia from passing the act of 1814.
Nor can the circumstance of Polly Enpes being a feme covert, prevent the operation of the statute; for, although she was proven to be covert at the trial, there is no evi-deuce of her being so when her father died, and it is, in the latter case, and in the latter case only, that by the act of 1814, three years after becoming discovert is allowed for bringing her action.
According to the act of this country, then, a term seven years less is allowed to infants after coming to full age, to make their entry upon lands, than was permitted under the act of Virginia; so that, in deciding upon the authority of the legislature to pass the act of 181 t, the question fairly arises, whether or not, by the compact with Virginia, the legislature of this country is inhibited from altering the law of ¡imitations, as to actions for land derived from the laws of that state.
The seventh section of the compact provides, that all frivatc rights and interests of lands, within the ‘hem *378 district, derived from ihe laws of Virginia prior to the ⅜ peration, shall remain valid and secure bv the laws of the-proposed state, and snail be determined by the laws then existing in the state of Virginia,
The com-v r^tra'*i'st iiitSh,1 pr-e 38, sect 7tb, expounded.
According to the clear import of this section, in order ts ascertain whether those claiming under the laws of V<r-ginia, had at the time of the seperation, an interest or right |0 ]an(:js Ring within this state, there is no question but that, the laws of that state, regardless of any declaratory or explanatory laws, which may be enacted by this country, and those only, should form the rule of decision.
But whilst the legislative enactments of this country, are by the compact, not permitted to effect the validity of those rights, we are of opinion, that instrument should not be construed so as to preclude the legislature from either regulating the mode of action, or limiting the time, it should be prosecuted, for the purpose of asserting those rights.
That the section alluded to, was not understood by the parties to that compact, as inhibiting the legislature from passing laws by which those rights might become forfeited,, is, we apprehend, apparent from other parts of that instrument. For it is, furthermore, in the latter clause of th® eighth section provided, that no neglect of cultivation or improvement of any laud, within either the proposed state or that cf Virginia, belonging to the non-resident citize» of the other, shall subject such non-resident to forfeiture or other penalty, within the term of six years, &c.
Now, as by the then law's of Virginia, lands were not, either for a failure to improve, or cultivate, subject to forfeiture, it is obvious, that the members of the compact must have understood the seventh section as not furnishing any restraint against the legislature imposing sqch a forfeiture^ and that the clause cited from the eighth section, was introduced for the purpose of supplying what was not contained in the seventh, and restraining, for the time therein mentioned, the exercise of such an authority.
If then, notwithstanding the compact, laws of forfeiture maybe enacted, no reason is perceived why the legislature should not be allowed to regulate the limitation of actions. For although possession may, in process of time, ripen into a perfect right t.o the land, it does so, under the efficacy of the laws oflimitations, operating in the nature of a forfeiture upon the failure of the claimant in not asserting 1# right in due time.
*379 That the legislature is not interdicted from regulating limitations, is moreover further evinced by the decisions of this court, in relation to the laws regulating the making of surveys of land derived from the laws of Virginia.
It will be recollected, that at the time of the separation, according to the laws of Virginia, for a failure to appoint agents and attend the making of surveys, the owners of lands were subjected to a forfeiture of their claims.
The time thus prescribed, by those laws, for the appointment of agents, &c. it will also be observed, was at the first and second sessions of the legislature of this country, after the separation, successively prolonged; and although many entries, which, by the laws of Virginia, would, for a failure to appoint the agents, &c. ns required, have become forfeited, yet in consequence of the prolongation of the time by the statutes of this country, surveys have, in many instances, been made, and in the various cases, presented for the adjudication of this court, and growing out of surveys thus made under the authority of the laws of this country, not the slightest suggestion against the right of the legislature to pass such laws, is to be found.
In those cases involving the right to survey, which have heretofore occurred, there is not, it is true, any thing said as to the competency of the legislature of this country ta prolong the time of surveying, but as in deciding upon those fases, the right of the legislature to pass the laws, must have been necessarily- involved, the silence of the court up-en the subject must be considered as a recognition of the. authority of the legislature.
And if, in extending the time of surveying, the legisla-, ture has not exceeded its authority, the principle is not perceived whereby its inability to pass the iatv of 1814, can be inferred.
By the latter act, it is true, the time for bringing actions is reduced to a shorter time than was allowed by the laws of Virginia, whereas by the former, a longer time is given the owner to make his survey, but as the law has undergone a change in relation to each case, if in a contest with an adverse claim, derived from the laws of Virginia, the laws enacted by the legislature of this country should be regarded as the rule of decision in the former case: so in such a contest, the determination ought, most upquestionablv, ia the latter case, lobe, according to the laws enacted by this' country likewise.
Wicklifj'c. for appellant.
An -additional argumint, illustrative of tlie power of the Legislature, may be moreover drawn from the decision of the supreme court of the United States, in the case of Walden against Gratz’s heirs, 1 Wheaton, 292.
As Gralz, who was the plaintiff in the court of original jurisdiction in that case, derived title under a deed executed whilst there was an adverse possession of the land, there is no doubt but according to the laws of Virginia, at the separation, he could not have recovered; but as, according to the opinion of that court, the statute of this country, passed in 1798, concerning champerty and maintainance, au-thorised the bargainee of such a deed to bring suit in his own name, the action of Gratz was sustained.
Thus, in the case cited from Wheaton, a striking instance is perceived, of a recovery under the laws bf this country, in a case which, if ii had been determined by the laws of Virginia at the making of the compact, the action would not have been sustained.
In the opinion of the supreme court, therefore, the legislature of this country cannot have been restrained by the compact from passing the act of 1798, under which, contrary to the laws of Virginia, the title passed to Gratz. And if the legislature were not so restrained, we apprehend, it follows pretty conclusively, that although by the act of 1814, a different determination to what would otherwise have been had, may in many cases result, the legislature, notwithstanding, possessed the power to pass it.
-For if that act, in its operation, is admitted to affect the right, it cannot, upon the most extended construction, he more effectual than that of 1798, in passing the title to another. •
Let no distinction be attempted to be drawn between those statutes in consequence of the title passing by the act of the owner in the one case, and not in the other; for,'although under the áct of limitations, no positive act may be necessary to ^be done by the rightful Owner to enable the possessor to gain title, yet by his failure to assert his claim within the time prescribed, he demonstrates an abandonment of his interest, and thereby evinces a willingness for the possessor to obtain, through the efficacy of the law, a title to the land.
Upon the whole, we are of opinion the judgment must be affirmed with cost.